S. Ronald AKS, D.D.S.; Glen Henson; and James E. Williams, D.O., individually and as representatives of all others similarly situated; and Peggy Henson and Betty A. Williams, individually, Plaintiffs,

v.

John J. BENNETT; Compensation Programs, Inc. of Kansas City; and Integrated Financial Services, Inc., Defendants.

Civ. A. No. 92–2193–JWL.

United States District Court, D. Kansas.

June 17, 1993.

John M. Klamann, Payne & Jones, Chtd., Overland Park, KS, Kenneth B. McClain, Humphrey, Farrington & McClain, Independence, MO, for plaintiffs.

Dennis L. Davis, Tamara Wilson Setser, Cheryl Bloethe Linder, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for defendant Southgate Bank.

Michael T. Halloran, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Sandra S. Watts, Kenneth C. Brostron, Margaret M. Mooney, Lashly & Baer, P.C., St. Louis, MO, for defendants John J. Bennett, Compensations Programs, Inc. and Integrated Financial Services, Inc.

John J. Bennett, pro se.

Kent S. Jackson, Joe B. Whisler, Cooling & Herbers, P.C., Kansas City, MO, for movants Eric E. Ulmer, Dr. Bernard Gould, Dr. Don Davis, Dr. Vernon Debus and Dr. James Trimmer.

Juliann W. Graves, Benny J. Harding, Ronald S. Weiss, James F.B. Daniels, David J. Weimer, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for movant the Official Equity Sec. Holders' Committee.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

*I. Introduction*

This matter comes before the court on the plaintiffs' motion to certify a plaintiffs' class for claims against the defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (Doc. # 158). The disposition of this issue was deferred for further briefing in the court's order of December 24, 1992, in which the court certified a plaintiffs' class to pursue claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Aks v. Southgate Trust Co.*, 1992 WL 401708 (D.Kan. Dec. 24, 1992). For the reasons set forth below, the plaintiffs' motion for class certification on their RICO and securities fraud claims are denied.

## II. Facts

The facts as alleged by the plaintiffs are set out below. The plaintiffs invested employee benefit plan assets in a series of three related investments that they alleged were sponsored, sold, and operated by the defendants. These were Master Mortgage Fund Trust VII ("MMFT VII"), Master Mortgage Fund Trust VII Guaranteed Plus Fund ("Guaranteed Fund"), and Master Mortgage Investment Fund, Inc. ("MMIF").

John J. Bennett formed MMFT VII in 1985 as a common law trust and operated it as a blind investment pool funded by qualified ERISA employee benefit plan assets. MMFT VII used these assets to provide loans to real estate projects. Integrated Financial Services, Inc. ("IFS") was MMFT VII's investment advisor and servicing agent and was itself owned by John J. Bennett. Compensations Programs, Inc. ("CPI"), set up ERISA qualified plans for professionals and businesses including the plaintiffs. Plaintiffs allege that Mr. Bennett was at all times pertinent the president and/or chairman of the board of CPI.

Sometime in 1988 or 1989, Mr. Bennett created "MMIF", a corporate real estate investment trust ("REIT"). Mr. Bennett was CEO of MMIF. In 1989, the entire loan portfolio of MMFT VII was conveyed to MMIF through a circuitous route.

In order to accomplish this transfer, Mr. Bennett also created the "Guaranteed Fund" which was an account within MMFT VII. Guaranteed Fund was funded with proceeds of maturing loans from the MMFT VII portfolio, purchase proceeds from MMIF's purchase of MMFT VII's existing loans, and separate investments by qualified plans. The monies accumulated in Guaranteed Fund were loaned to MMIF to enable MMIF to purchase the MMFT VII portfolio and to pay MMIF operating costs.

The plaintiffs allege that those plans which invested in MMFT VII became investors in MMIF as follows. Proceeds from maturing loans held by MMFT VII were used to fund the Guaranteed Fund. These proceeds were then loaned back to MMFT VII, which in turn lent the money to MMIF. MMIF returned the money to MMFT VII as consideration for the purchase of MMFT VII's remaining portfolio. The proceeds of these sales of MMFT VII assets were credited to each Settlor's account. R.H. Jones Title and Abstract Co. ("R.H. Jones"), the trustee of MMFT VII, paid each Settlor's share of the proceeds to an escrow agent. Meanwhile, Benchmark Financial managed a public offering of MMIF stock. Mr. Bennett's wife, Mrs. Janet Gatz Bennett, was president of Benchmark Financial at the time of the stock offering. Each Settlor of MMFT VII was given the option of converting their portion of MMFT VII proceeds held in escrow into MMIF stock.

Those Settlors who did not allow their MMFT VII investment to be converted to MMIF stock continued to leave their proceeds in the Guaranteed Fund. The Guaranteed Fund extended a ten million dollar line of credit to MMIF and loaned approximately $8.5 million to MMIF. MMIF is no longer liquid (i.e. it cannot pay its debts). The plaintiffs allege that when the Guaranteed Fund loan to MMIF became due, it was extended and the interest rate was lowered without any additional consideration. The plaintiffs allege that the trustee of Guaranteed Fund, R.H. Jones, is a shell corporation under the exclusive control of Mr. Bennett.

On April 7, 1992, MMIF filed a voluntary petition in bankruptcy under Chapter 11 in the Western District of Missouri. The Committee, which consists of representatives of certain plans which hold shares of MMIF stock, has been approved by the bankruptcy court as the equity committee for MMIF. Guaranteed Fund, which has been reorganized and renamed as Secured Note I, is one of MMIF's largest creditors in the bankruptcy action.

On May 21, 1992, the plaintiffs, Ronald S. Aks, Glen and Peggy Henson, and James E. and Betty A. Williams, filed a class action complaint against Mr. Bennett, IFS, and Compensation Programs, Inc. ("CPI"), The Southgate Bank, and Southgate Trust Co. The plaintiffs claim three causes of action against all the defendants under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for various breaches of fiduciary duties. They also allege a cause of action under section 10(b) of the Securities Exchange Act of 1934, 15

U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, for security fraud and a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* against Mr. Bennett, IFS, and CPI (hereinafter "the Bennett defendants"). The plaintiffs have reached stipulated settlements with The Southgate Bank and Southgate Trust Co., to which the court has given final approval. After a hearing on December 14 and 15, 1992, in which evidence was taken, the court certified a plaintiffs' class for the plaintiffs' claims against the defendants under ERISA for breach of fiduciary duties.

### III. Certification of a Class

Plaintiffs Ronald Aks, Glen Henson, and James Williams have moved the court pursuant to Fed.R.Civ.P. 23(a) and (b)(3) to certify a class action with themselves as class representatives. Plaintiffs Peggy Henson and Betty Williams do not seek to be class representatives. "Plaintiffs" will hereinafter refer to the purported class representatives unless otherwise noted. The plaintiffs seek to represent a class consisting of "all persons who are/or were participants and/or beneficiaries of an employment benefit plan(s) as defined in Section 3 of [ERISA] where (a) The Southgate Trust Co. was and/or is (i) Trustee and/or Co–Trustee of the respective employee benefit plan(s); and/or (ii) Trustee or Co–Trustee of the Master Trust; and (b) Plan assets were invested into Master Mortgage Investment Fund, Inc. and/or Master Mortgage Fund Trust Guaranteed Plus Fund by and/or through the Master Trust or otherwise while The Southgate Trust Company was a plan fiduciary." (Plaintiffs' Amended Complaint). For the reasons set forth below, although having previously certified the class to pursue the ERISA claims, the court denies the motion to certify a class as to the security fraud and RICO claims.

### A. Standard for Class Certification

Federal Rule of Civil Procedure 23 governs the certification of class actions. Plaintiffs have the burden of proving that all four requirements of Rule 23(a) and one requirement of Rule 23(b) are met by the purported class and purported class representatives. *See Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988). Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. The plaintiffs have brought this class action under Rule 23(b)(3), which provides in part:

An action may be maintained as a class action if ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive." *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988). This order will address class certification for the security and RICO claims together.

### B. Certification for Security and RICO Claims

The plaintiffs have made claims against the Bennett defendants for violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 for security fraud and violations of RICO. In the order of December 24, 1992, the court instructed the parties to brief issues related to whether the plaintiffs are typical and adequate representatives of the class. On December 23, 1992, the Bankruptcy Court of the Western District of Missouri issued a preliminary injunction in a related bankruptcy proceeding which enjoined the parties from taking any further action in this case. The bankruptcy court lifted the preliminary injunction on May 18, 1992, and now

the court finds that the plaintiffs have not sustained their burden of showing that all the requirements for class certification have been met.

### 1. Numerosity and Commonality

■ The court finds that the numerosity and commonality requirements of Rule 23(a) are met. Although there is "no set formula" to determine whether this requirement is met, *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir.1978), the class is sufficiently numerous if joinder of all parties is impracticable. Fed. R.Civ.P. 23(a)(1). The plaintiffs allege that there are at least 118 qualified employee benefit plans which invested in MMIF while Southgate Trust Co. was co-trustee. All together, these plans have more than 1,000 participants. The court finds that this number of class members is sufficiently sizable to satisfy the numerosity requirement, with which notion none of the parties has taken issue.

■ Also, the plaintiffs have shown that there are questions of law or fact which are common to the entire class, thus satisfying Rule 23(a)(2). None of the parties argued that this requirement was not met. Among the questions which are common to the entire class are (1) whether the Bennett defendants violated the security fraud provisions of § 10b of the Security Exchange Act of 1934 and/or Rule 10b in connection with the purchase and/or sale of shares of MMIF and/or units of Guaranteed Plus; and (2) whether the Bennett defendants engaged in a pattern of predicate acts of mail fraud, wire fraud, and/or securities fraud in their conduct of the affairs of an enterprise.

### 2. Typicality, Adequacy of Representation, and Predominance of Common Questions

The plaintiffs have not met their burden of showing that the requirements of typicality, adequacy of representation, and predominance of common questions have been met. The difficulty with certifying the plaintiffs as representatives for the purported class is that they occupy a different status with respect to the plans which are the subject of this lawsuit than the rest of the proposed class.

■ Rule 23(a)(3) requires that claims of the class representatives be typical of those of the class as a whole. The representative must also fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). To satisfy the requirements of typicality, the class representatives must be class members, may not have interests antagonistic to those of the class, and must have suffered the same injury as the other class members. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Closely related to these requirements of typicality and adequacy is the requirement that common questions of law or fact predominate in the action. *See* Fed.R.Civ.P. 23(b)(3). These requirements will be considered together because the considerations of typicality, adequacy, and predominance of common questions tend to overlap. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985).

■ Plaintiff Aks was a participant, beneficiary, and trustee of a pension plan which had investments in MMFT VII, MMIF, and the Guaranteed Fund. Plaintiff Henson was a participant, beneficiary, and trustee of a defined benefit plan which had investments in MMFT VII and MMIF. Plaintiff Williams was a participant, beneficiary, and trustee of a pension plan and a profit-sharing plan which had investments in MMFT VII, MMIF, and the Guaranteed Fund. However, the class which the plaintiffs move the court to certify consists solely of "participants and/or beneficiaries" of certain employment benefit plans. The plaintiffs' unique status as trustees as well as participants and beneficiaries diminishes the adequacy of their representation, the typicality of their claims and defenses, and the predominance of common questions.

■ Plan assets must be held in trust under ERISA. 29 U.S.C. § 1103(a). Generally, only a trustee may bring a legal action on behalf of the trust. Restatement (Second) of Trusts § 281 (1959). However, "[t]he trustee is under a duty to the beneficiary to take reasonable steps to realize on claims which he holds in trust." Restatement (Second) of Trusts § 177 (1959). These claims may include monies owed the trust for tort claims such as fraud. *See* Restatement (Sec-

ond) of Trusts § 177 comment a (1959). Fraud is the underlying tort for the securities and RICO claims. "If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person." Restatement (Second) of Trusts § 282(2) (1959). However, the trustees of the various plans have not been added as defendants in this action.

The plaintiffs, as trustees of their respective plans, may maintain individual non-ERISA suits, such as the RICO and 10b–5 actions, on behalf of their plans. However, this is not typical of the rest of the class who may not, as beneficiaries, be able to bring these claims directly against the defendants without adding the trustees of their plans as defendants. Because the plaintiffs are trustees as well as beneficiaries and participants, their interests may be antagonistic at times to the interests of those purported class members who are only participants and/or beneficiaries. Therefore, they may not be adequate representatives of the purported class.

■ The various plans whose participants and/or beneficiaries are members of the class are organized in a variety of states and therefore subject to various state trust laws. Whether or not a class member, as a participant or beneficiary of an employment benefit plan, may bring a suit directly against the defendants is determined by the law of the state in which the plan is organized. Therefore, the legal inquiry of who may sue and whether or not the trustee of each plan must be added as a defendant in order for the participants and/or beneficiaries of the plan to sue the defendants directly must be conducted on a state by state basis. In this situation, common questions of law and fact do not predominate.

■ The plaintiffs argue that the provisions of ERISA preempt any state trust law which might determine whether beneficiaries of an ERISA trust may bring an action directly against the defendants in a situation such as this. The court disagrees.

It is clear that ERISA preempts all state law that "relates to" an employee benefit plan, even if state law requirements coexist with or are in addition to the rights and obligations of ERISA. *See Shaw v. Delta Airlines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); 29 U.S.C. § 1144(a). However, this is not the type of state law which ERISA preempts. ERISA has been held to preempt state law causes of action by participants and beneficiaries against plans and plan administrators for injuries which are not covered by the language of ERISA, such as breach of contract. *See Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1264 (10th Cir.1988). However, the Supreme Court in *Shaw* indicated that it would not extend the "relate to" language beyond reasonable bounds. The Court observed that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. "Where ... a state statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Rebaldo v. Cuomo,* 749 F.2d 133, 139 (2d Cir.1984). *See In re Dyke,* 943 F.2d 1435, 1447–48 (5th Cir.1991). State trust laws which determine who may sue those outside the trust for injuries to the corpus of the trust are the types of laws which only peripherally affect employee benefit plans and are not subject to preemption by ERISA.

In addition, the plaintiffs, who bear the burden of showing that all elements of class certification have been met, have not cited to this court any case or statute which holds that the provisions of ERISA itself or federal common law developed under ERISA preempts state law concerning whether participants and/or beneficiaries of ERISA employee benefit plans seeking to bring an action under a federal statute other than ERISA (such as RICO or Section 10(b) of the Securities and Exchange Act of 1934) may bring such an action directly against those who allegedly injured the plan itself by violating such statute. The court has found no such authority, either.

Therefore, the court finds that the plaintiffs have not satisfied their burden of showing that all the requirements for class certification for their claims under RICO and Rule 10b–5 have been met. The court denies these portions of their motion to certify a class.

## IV. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that the plaintiffs' motion for class certification (Doc. # 158) is denied as to counts IV (security fraud) and V (RICO).

**IT IS SO ORDERED.**