**Nicholas J. SICA, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.**

**No. 83–6658–CIV.**

United States District Court, S.D. Florida.

Dec. 13, 1990.

Barry G. Roderman, Dianne Weaver, co-counsel, Fort Lauderdale, Fla., for plaintiff.

Robert D. McIntosh, Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

This cause is before the Court on Defendant's motion for summary judgment as to Counts II, III, and VI of Plaintiff's Complaint.

### BACKGROUND

Plaintiff Sica sold insurance as an agent for The Equitable Life Assurance Society of the United States ("Equitable") for fifteen years. As an agent of Equitable, he participated in Defendant's Agents Benefit Program and the Disability Income Bene-

fits Plan provided therein. During this period, Sica was also licensed with other companies to sell non-Equitable products.

In February, 1981, Sica filed a claim in accordance with the disability portion of his benefit plan after sustaining serious injuries in an automobile accident. Defendant paid Sica's claim until April 30, 1983, whereupon Defendant terminated the payments on the basis that Sica no longer qualified for benefits under the plan. Asserting that he continues to be physically and psychologically disabled and that the termination of benefits was made without basis in fact and contrary to medical opinions, Sica seeks damages for the intentional infliction of emotional distress, punitive damages and attorney's fees. Equitable has moved for summary judgment on the grounds that Counts II, III, and IV, which are predicated on state law causes of action, are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended 29 U.S.C. § 1001 *et seq.*

## DISCUSSION

The question presented to this Court by the instant motion is whether Sica is an employee under ERISA. If Sica is considered an employee, then ERISA would clearly preempt his state law claims and mandate the granting of Defendant's motion for summary judgment. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (general preemption clause and civil enforcement provisions of ERISA provide an exclusive federal remedy for disputes arising out of claim for benefits under ERISA-regulated employee benefit plans). On the other hand, if Sica is considered an independent contractor, he can maintain an action for state common law claims. *Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1101

(5th Cir.1990). As a preliminary matter, the Court notes that whether an individual is an employee or an independent contractor is a question of law involving the interpretation of ERISA. *Id.* at 1101; *Holt v. Winpisinger,* 811 F.2d 1532, 1536 (D.C.Cir. 1987); *Short v. Central States, Southeast & Southeast Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984).[1]

ERISA tersely defines an "employee" as "any individual employed by an employer," 29 U.S.C. Section 1002(6). This definition thus provides little guidance as to who is entitled to ERISA coverage. One circuit has employed a statutory analysis to ascertain whether an individual should be considered an "employee" for ERISA purposes. In *Darden v. Nationwide Mutual Insurance Co.,* 796 F.2d 701 (4th Cir.1986), an insurance agent brought an action seeking retirement benefits under ERISA. Relying on two Supreme Court decisions, *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947), and *NLRB v. Hearst Publications,* 322 U.S. 111, 120–29, 64 S.Ct. 851, 855–60, 88 L.Ed. 1170 (1944), the Fourth Circuit determined that "the definition of 'employee' should be tailored to the purposes of the statute being construed," and should not be based on the common law standard. *Darden,* 796 F.2d at 706. Examining the Act itself, the court explained that Congress was concerned that "many employees with long years of employment are losing anticipated retirement benefits." *Id.* at 706 (quoting § 2 of ERISA, 29 U.S.C. § 1001). In light of this concern, the Court proceeded to fashion a three-part inquiry to determine whether an individual who does not fit within the traditional concept of an employee should nonetheless be considered an employee under ERISA. Under this three-part test, one is an employee if: 1) the employer took some action that created a reasonable expectation on the employee's part that he would be paid benefits in the

---

**1.** In light of the fact that the ERISA definition of "employee" is identical to the Fair Labor Standards Act ("FLSA") definition, the court in *Penn* followed those decisions based on the FLSA, where the courts held that whether an individual is an employee or an independent

contractor is a question of law. *See, e.g., Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir.1985); *Castillo v. Givens,* 704 F.2d 181, 185 (5th Cir.), *cert denied, Givens v. Castillo,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983).

future, 2) the employee relied on that expectation by remaining for "long years", or a substantial period of time, in the "employer's" service, and by foregoing other significant means of providing for his retirement, and 3) the employee lacked sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits. *Id.* at 706–07. Employing these factors, the court concluded that the matter was not ripe for summary judgment, since the parties had focused on the common law test of master-servant rather than on the goals of ERISA. *See also Taber v. Sentry Life Ins. Co.,* No. C–87–1661, 1987 WL 97213 (N.D.Cal. July 17, 1987).

The majority of courts considering the issue, however, have determined that the definition of "employee" set forth in 29 U.S.C. § 1002(6) should be construed in terms of common law agency principles. *See, e.g., Penn,* 898 F.2d at 1103; *Wolcott v. Nationwide Mutual Ins. Co.,* 884 F.2d 245, 250 (6th Cir.1989); *Holt,* 811 F.2d at 1538; *Short,* 729 F.2d at 571. As explained by the court in *Holt:*

> The absence of a comprehensive definition of "employee" in ERISA and other features of that legislation indicate plainly enough that Congress intended the Secretary of the Treasury and Secretary of Labor, who were administrators of various ERISA provisions, to continue their practice of defining "employee" in terms of common-law agency principles.

*Id.* at 1538 n. 44 (citations omitted). The relevant Treasury Regulations cited by the *Holt* court provide that an individual is an "employee" if his relationship with the one for whom he performs services is the legal relationship of employer and employee. 26 C.F.R. 31.3121(d)–1(c)(1) (1988). Whether one is an employee or an independent contractor must be ascertained on a case-by-case basis, since:

> there is no shorthand formula or magic phrase that can be applied to find an answer, but all of the incidents of the relationship must be assessed and

weighed with no one factor being decisive. What is important is that the total factual context is assessed in light of the pertinent common-law agency principles.

*NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968). Among the traditional common law criteria courts have considered in determining whether an agent is an employee or an independent contractor are the following: "1) the degree of control and supervision over the manner in which the work is performed 2) whether or not the "employee" is engaged in his own business; 3) the company's right to hire and discharge the persons doing the work; 4) the method of compensation to the "employee"; 5) whether the "employee" receives the same benefits as the company's regular employees; 6) who has control of the premises where the work is done; 7) how the parties structure their Social Security and income relations; 8) whether the "employee" stands to make a profit on the work of those working for him; 9) the amount of the "employee's" investment in facilities and equipment; 10) the belief of the parties as to their business relationship; 11) the amount of skill required in the particular occupation; and 12) the duration of time for which the "employee" is employed. *Wolcott,* 884 F.2d at 251 (citing *Holt,* 811 F.2d at 1539–40; Restatement (Second) of Agency § 220(2) (1958)).

■ Having considered the two approaches courts have utilized to ascertain whether an individual is an "employee" for purposes of ERISA, this Court adopts the position of those cases employing common law agency principles. Although the statutory analysis of *Darden* initially seems inviting,[2] for it seemingly recognizes Congress' intent to rectify perceived abuses in the administration of employee benefit plans, further analysis suggests that this "statutory" analysis may not, in fact, produce the result that Congress intended. In *Darden,* the plaintiff brought a cause of

---

**2.** In its Order dated July 7, 1988, denying Defendant's Motion to Dismiss, this Court employed the *Darden* factors to determine that Sica had alleged sufficient facts to indicate that he may be an independent contractor under ERISA. However, after further consideration, the Court rejects this approach.

action seeking to recover benefits where the defendant was attempting to avoid ERISA coverage. Unlike in *Darden,* however, Sica has not brought a claim under ERISA, but rather, seeks relief under common law theories. The adoption of *Darden*'s broad definition of "employee," which encompasses virtually any individual who is a participant in an employer benefit plan, may have the undesirable effect of preempting Sica's state law claims and precluding any redress he, and others in his situation, may have, even though he is more appropriately classified as an independent contractor.[3] The Court cannot accept such a result.

One cannot be classified as an "employee" when he seeks recovery under ERISA, yet be classified as an "independent contractor" when his claims are based on common law principles. As this Court stated in its July 7, 1988 Order:

> [W]hether ERISA applies to the instant case does not depend on which cause of action allows the greatest recovery for a worker. Such a position ignores the Supreme Court opinion in *Pilot Life,* supra, where the Plaintiff did not assert any claims under ERISA and the Supreme Court held that the Plaintiff's state law claims were preempted by ERISA. Defendant correctly points out that either a plan is an ERISA type plan or it is not, regardless of whether the worker or the sponsor raises the issue.

*Id.* at 5. Thus, in order to guarantee individuals ERISA coverage who are entitled to protection, while not precluding those who are more appropriately considered independent contractors from bringing state law causes of action, this Court follows the majority view of evaluating whether one is an "employee" under ERISA based on common law principles of agency. Under this approach, not every participant in a compa-

ny pension or benefit plan will qualify necessarily for ERISA coverage.

■ Applying the 12–factor common law agency approach of *Wolcott* detailed above, the Court finds that the factors in favor of classifying Sica as an independent contractor far outweigh those in favor of calling him an employee. Most importantly, there is no indication that Equitable exercised any control whatsoever over the time Sica spent selling its products or over the manner in which he sold them. *See Community For Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Holt,* 811 F.2d at 1539. Although Sica was obligated to meet minimum sales requirements in order to continue his agency with Equitable, he was free to sell for other companies and he was, in fact, licensed to do so. Moreover, by the terms of his agency agreement with Equitable, either party could terminate the arrangement with thirty days notice; thus, Equitable's power to terminate Sica was no greater than Sica's power to voluntarily resign as agent.

Sica's method of compensation was by commission, as opposed to on a salary basis—a further indication of his status as an independent contractor. *Darden,* 796 F.2d at 705. Furthermore, he did not receive the typical workers compensation, vacation or sick leave benefits of Equitable's other employees, and his participation in the company's Agent Benefit Program was voluntary.

There is evidence that Sica, not Equitable, controlled the work premises. Although the office Sica used to sell for Equitable was designated as an Equitable office, Sica participated in the location of the office and he had his own letterhead which was not designed or provided by Equitable. There is a factual dispute over whether Equitable or Sica paid for Sica's business

---

**3.** Under the three-part test of *Darden,* Sica would probably qualify as an "employee" under ERISA. It is clear that by participating in the benefits plans, Sica had an expectation that Equitable would pay him any disability benefits he was entitled to. Second, Sica remained in Equitable's service for fifteen years, during which time he forewent other means of providing for

his retirement. Finally, although Sica contends in his declaration of facts that he negotiated with Defendant to obtain long-term disability benefits, it is not certain that he, in fact, possessed sufficient bargaining power to alter the type of insurance benefits Equitable was willing to provide.

expenses such as telephones, receptionist, secretarial help, office space, and stationery. However, even if these expenses were covered by Equitable, this is not necessarily indicative of "employee" status—evidence indicates that these benefits may be merely another perk Equitable provided its agents in recognition of good performance and that as performance increased over time, so did the benefits. Moreover, business decisions concerning the office and facilities, such as the firing of employees, were made by Sica alone.

Although the parties' characterization of their relationship is not necessarily determinative of an individual's status, it is an additional factor to be considered. *Holt*, 811 F.2d at 1538. In this case, the agency contract between Sica and Equitable provided that "nothing contained herein shall be construed to create the relationship of employer and employee." A subsequent letter from Equitable to Sica referring to Sica as an "employee" does not alter this initial contractual relationship. Similarly, Sica was structured as a "non-employee" for Social Security purposes. Although Equitable did withhold FICA taxes, it did not withhold other state, federal or local taxes on Sica's behalf. Moreover, Sica was responsible for computing, administering and allocating his own tax obligations received from Equitable and other sources. Finally, even though Sica was Equitable's agent for the better part of fifteen years and he worked primarily on its behalf, he was licensed to sell insurance for other companies and, in addition, he ran three other businesses unrelated to insurance during this time. Thus, assessing "the total factual context" of Sica's relationship with Equitable, the Court determines that Sica is more appropriately considered an independent contractor. *NLRB v. United Ins. Co.*, 390 U.S. at 258, 88 S.Ct. at 991.

Accordingly, it is ORDERED and ADJUDGED that Defendant's motion for summary judgment is hereby DENIED.

DONE and ORDERED.